IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| A.F., and K.F., on behalf of their minor child, R.F., | ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL NO. 06-00488 SOM/BMK

ORDER AFFIRMING HEARING OFFICER'S FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION

ORDER AFFIRMING HEARING OFFICER'S FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND DECISION

I.      INTRODUCTION.

It is undisputed that, under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 to 1487 ("IDEA"), RF was entitled to extended school year services during the summer of 2006 ("2006 ESY"). The issue before this court is whether the Department of Education, State of Hawaii ("State"), provided RF with a free and appropriate public education ("FAPE") during the 2006 ESY when it provided RF with ninety minutes per week of both occupational therapy and speech/language therapy, rather than two hours of each.[1]  RF's parents filed for a due

---

[1] "FAPE" is defined as

special education and related services that--

(A) have been provided at public expense, under public supervision and direction, and without charge;

process hearing, arguing that denial of at least two hours of each was a denial of a FAPE. The hearing officer ruled that the State had not provided RF with a FAPE during the 2006 ESY. The State appealed. The court can affirm the hearing officer on any ground apparent from the record and does affirm on the ground that, under the circumstances, the State violated the "stay put" provision governing this matter while RF's parents challenged the 2006 ESY.

II.     BACKGROUND.

RF is a seven-year-old girl in the first grade. She has cerebral palsy and a heart defect, is a quadriplegic, is legally blind, and requires daily anti-seizure medication. She needs help to walk and use the bathroom.

In the 2004-05 school year, RF attended a public elementary school in Hawaii. There is no dispute that RF's Individualized Education Program ("IEP") for the 2004-05 school year provided her with one hour per week of occupational therapy

---

        (B) meet the standards of the State
        educational agency;

        (C) include an appropriate preschool,
        elementary school, or secondary school
        education in the State involved; and

        (D) are provided in conformity with the
        individualized education program required
        under section 1414(d) of this title.

20 U.S.C.A. § 1401

and one hour per week of speech/language therapy.  Although that IEP provided that ESY was appropriate for RF during the summer of 2005, it did not determine how much therapy RF was to receive during the ESY.  In June 2005, the IEP team decided to continue providing RF with therapy for the 2005 ESY at the same level as during the 2004-05 school year.  See Transcript 1 of 3 (filed on September 27, 2006) at 62-70.  RF's mother testified that the parties agreed to "carr[y] over" the one hour of occupational therapy and one hour of speech/language therapy from the regular school year into the 2006 ESY.  Id. at 64.

An IEP for the 2005-06 school year was developed by RF's IEP team between April and August 2005.  See Exhibit 16 to Petitioner's Exhibits (Sept. 27, 2006).  This IEP determined that RF met "the criteria for ESY because of the severity of the disabling condition, extent of potential regression and rate of recoupment following interruption of educational programming, for breaks longer than three weeks."  Id. at Bates No. 00052.  This IEP did not state the amount of therapy RF was to receive during the 2006 ESY.

In September 2005, RF's parents and the State settled an earlier dispute as to the provision of services to RF.  Pursuant to this settlement, RF's occupational therapy and speech/language therapy were increased by one hour each, to two hours for each form of therapy per week for the 2005-06 school

year.  The settlement agreement did not specifically state the amount of therapy RF was to receive during the 2006 ESY. Instead, RF's parents and the State agreed "to hold an IEP meeting no later than May 15, 2006, to discuss [RF's] 2006 extended school year summer program."  See Compromise and Settlement Agreement (Sept. 20, 2005) at Bates Nos. 00023 and 00025 (attached as Exhibit 15 to Petitioner's Exhibits).

While receiving two hours per week of occupational therapy and two hours per week of speech/language therapy, RF made significant progress.  RF's father testified that the extra therapy made all the difference in the world.  RF's mother called RF's progress under the increased therapy "phenomenal."

IEP meetings were held on April 7 and 20, 2006.  RF's IEP team determined that, during the 2006 ESY, RF would only receive ninety minutes per week of occupational therapy and ninety minutes per week of speech/language therapy.  See Individualized Educational Plan (April 2005) at Bates No. 00189 (attached to Petitioner's Exhibits as Ex. 36).

On April 20, 2006, RF's parents filed a request for an impartial due process hearing to challenge the reduction of RF's occupational therapy and speech/language therapy from two hours per week to ninety minutes per week of each form of therapy.  See Request for Impartial Hearing (Apr. 20, 2006) (attached as

Exhibit 1 to Administrative Record on Appeal filed Sept. 27, 2006).

There is no dispute that the State was required to follow the "stay put" provision of the IDEA when RF's parents appealed the reduction of RF's therapy from the levels RF had been receiving during the 2005-06 school year. See 20 U.S.C. § 1415(k)(4); 34 C.F.R. § 300.514.  The "stay put" issue was raised by the hearing officer on the first day of the hearing and was argued to the hearing officer in RF's closing brief. See Transcript (1 of 3) (Sept. 27, 2006) at 21-22; Petitioners' Closing Brief (July 24, 2006) at 11.

The hearing officer held three days of hearings, eventually ruling in favor of RF's parents. See Findings of Fact, Conclusions of Law and Decision (Aug. 7, 2006).  The hearing officer determined that the April 2006 "IEP, which proposed reducing [RF's] occupational therapy and speech/language therapy to 1½ hours per week, was not appropriate for [RF] given her occupational therapy and speech/language needs." Id. at 9. The hearing officer reasoned that RF had been receiving two hours per week of both occupational therapy and speech/language therapy and that the reduction to ninety minutes per week when RF was "making great progress does not make sense." Id. at 10.  The hearing officer concluded that RF's "need for the full two hours

5

of speech/language and occupational therapy does not change when the regular school year ends."

Although the hearing officer did not expressly base his ruling on the "stay put" issue, he rejected the State's argument that, because the State had only provided one hour per week of each therapy during the previous summer, RF only needed to receive one hour per week of occupational therapy and one hour per week of speech/language therapy during the 2006 ESY.  The hearing officer noted that RF's therapy had not been reduced during the 2005 ESY from the 2004-05 school year levels.

III.     STANDARD OF REVIEW.

Any party aggrieved by a decision of a due process hearing officer under the IDEA may appeal the findings and decision to the state educational agency, 20 U.S.C. § 1415(g), or appeal the findings and decision to any state court or a United States district court.  20 U.S.C. § 1415(i)(2).

The burden in this court is on the State, the party challenging the administrative ruling.  Seattle Sch. Dist., No. 1, 82 F.3d at 1498.  However, judicial review of IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review.  Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993).  Courts review de novo the

appropriateness of a special education placement under the IDEA. County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996). Nevertheless, when reviewing state administrative decisions, courts must give due weight to judgments of education policy. County of San Diego, 93 F.3d at 1466; Ojai, 4 F.3d at 1472. The IDEA does not empower a court to substitute its own notion of sound educational policy for that of the school authorities that the court reviews. County of San Diego, 93 F.3d at 1466; Ojai, 4 F.3d at 1472; Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987). In recognition of the expertise of the administrative agency, the court must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in whole or in part. County of San Diego, 93 F.3d at 1466; Gregory K., 811 F.2d at 1311. Despite its discretion to reject the administrative findings after carefully considering them, a court is not permitted simply to ignore the administrative findings. County of San Diego, 93 F.3d at 1466; Gregory K., 811 F.2d at 1311.

IV.     ANALYSIS.

The Code of Federal Regulations provides that "[e]ach public agency shall ensure that extended school year services are available as necessary to provide FAPE . . . ." 34 C.F.R. § 300.309 (a)(1) (2005) (in effect during the summer of 2006). "Extended school year services must be provided only if a child's IEP team determines, on an individual basis, in accordance with §§ 300.340-300.350, that the services are necessary for the provision of FAPE to the child." 34 C.F.R. § 300.309 (a)(2) (2005).

The FAPE required must be tailored to the unique needs of the disabled child by means of an IEP. Board of Educ. of Henry Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982); see 20 U.S.C. § 1401(11); 34 C.F.R. § 300.340(a). RF's parents naturally want RF to receive the best education possible. However, the FAPE to which a disabled child is entitled is not the absolute best, or "potential-maximizing," education. Instead, states are obligated to provide a basic floor of opportunity through a program individually designed to provide educational benefits to the disabled child. Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Ash v. Lake Oswego Sch. Dist., 980 F.2d 585, 587 (9th Cir. 1992). This "basic floor of opportunity" includes access to specialized instruction and related services. Seattle Sch. Dist., No. 1, 82

F.3d at 1500 (quoting Rowley, 458 U.S. at 201).  Providing a basic floor means providing more than just a program that produces some minimal academic advancement, no matter how trivial.  Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 890 (9th Cir. 2001).

The State contends that the hearing officer erred in determining that, because it did not "make sense" to decrease therapy from the levels RF had received during the 2005-06 school year, a FAPE had not been provided.  See Wagner v. Bd. of Educ. of Montgomery County, 340 F. Supp. 2d 603, 616 (D. Md. 2004) (stating that, although a loss of therapy hours or a loss of extended school year services may be "regrettable," the law "does not demand that any particular set or level of services be maintained for a student merely because they were previously provided to that student.  Rather, the IDEA demands only that the services provided constitute 'meaningful educational benefit.'" (quoting Rowley, 458 U.S. at 192)).  The court makes no determination here as to whether the State provided RF with a FAPE during the 2006 ESY.[2]  Instead, the court affirms the hearing officer's decision because, under the circumstances, the State violated the "stay put" provision of the IDEA.

---

[2] Although RF has moved out-of-state, this action is not moot, as the hearing officer determined that RF's parents were the prevailing party, which may entitle them to attorney's fees.

This court may affirm the hearing officer's decision on any ground apparent from the record. See Resh v. Connecticut Nat'l Bank, 89 F.3d 598, 600 (9th Cir. 1996) ("We are free to affirm on any ground apparent in the record."). There is no dispute that, during the 2006 ESY, the State reduced RF's occupational therapy and speech/language therapy by thirty minutes per week from levels she had been receiving during the 2005-06 school year. The State argues that it did not violate the IDEA's "stay put" provision because the parties' last agreement for ESY therapy levels provided for only one hour each of occupational therapy and speech/language therapy. The State says that it therefore increased RF's therapy during the 2006 ESY, rather than decreased it. The court is not convinced.

This court need not here determine whether, as the State contends, the "stay put" provision was violated during the ESY only if the levels of therapy provided are lower than levels provided during the previous ESY. Pursuant to the "stay put" provision of the IDEA, when RF's parents appealed the decision to reduce RF's therapy during the 2006 ESY, the State should have either kept the therapy levels at the same level RF had been receiving during the 2005-06 school year, or honored its agreement from the previous summer to keep the ESY therapy level the same as during the regular school year. In either case, RF

was entitled to two hours per week of occupational therapy and two hours per week of speech/language therapy.

Even assuming that the State is correct in asserting that, when examining the "stay put" provision for ESY, this court should compare the ESY to the previous summer's ESY, the State is incorrect in asserting that it did not violate the "stay put" provision. RF had no written IEP covering therapy levels for the 2005 ESY. Instead, at the beginning of the 2005 ESY, RF's IEP team decided to continue the same level of therapy that she had been receiving during the 2004-05 school year. When the parties settled issues raised in another due process hearing, they agreed that RF would be provided an additional hour of occupational therapy and an additional hour of speech/language therapy every week for the 2005-06 school year. Under these circumstances, even though the settlement left for later determination what RF would receive in the 2006 ESY, RF's parents' appeal of the State's decision to reduce RF's therapy during the 2006 ESY triggered the State's obligation to provide RF with two hours per week of each of the two types of therapy.

The last ESY agreement between RF's parents and the State was to continue therapy levels during the 2005 ESY at the same level RF had been receiving during the 2004-05 school year. The State would like the court to view the 2005 ESY services as having involved one-hour therapy sessions. That is simply too

11

narrow a view of what the parties' agreement was with respect to the 2005 ESY therapy.  Even if the State only needed to provide in the 2006 ESY what the State had provided in the 2005 ESY, the issue is what the State provided in the 2005 ESY.  Nothing in the record indicates that the State decided to provide hour-long therapy sessions in the 2005 ESY independent of what was provided during the 2004-05 school year.  To the contrary, it appears the 2005 ESY services were intended to continue what had been provided during the 2004-05 school year.  The State thus, even under its own argument, should have continued in the 2006 ESY what it had provided during the 2005-06 school year.

On April 5, 2007, the State submitted a letter to the court, asking the court to examine Pachl ex rel. Pachl v. Seagren, 373 F. Supp. 2d 969, 975-978 (D. Minn 2003).  The State submits that Pachl stands for the proposition that the applicable ESY "stay put" is the last agreed upon summer placement of a child.  Pachl is certainly distinguishable on its facts, as it involved the issue of whether a state should have to pay for a child's placement at an out-of-state facility unilaterally chosen by the parents.  Moreover, Pachl says nothing inconsistent with the analysis the court sets forth above.

V.        CONCLUSION.

Because the court determines that the State violated the "stay put" provision of the IDEA during the 2006 ESY, the court affirms the hearing officer's decision.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2007.



_____
Susan Oki Mollway
United States District Judge

Department of Educ. v. A.F., et al., Civil No. 06-00488 SOM/BMK; ORDER AFFIRMING HEARING OFFICER'S FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION